FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
10/31/2023 2:33 PM
JAMIE SMITH
DISTRICT CLERK
D202571

CAUSE NO. D202571

| | | |
|---|---|---|
| ALISA BOUTTE, *Plaintiff* | § | IN THE DISTRICT COURT |
| | § | OF |
| v. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| BEAUMONT ISD, | § | 136th JUDICIAL DISTRICT |
| *Defendant* | § | TRIAL BY JURY DEMANDED |
| | § | |

## PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Dr. Alisa Boutte, Plaintiff ("Dr. Boutte" or "Plaintiff") complaining of Beaumont ISD, ("BISD"), and files this her Fourth Amended Original Petition; and in support hereof, Plaintiff would show the following:

### PARTIES

1.      Plaintiff is an African American **female** ("Black") and resident of Texas.

2.      BISD is a Texas Independent School District and at all material times was under influence in personnel matters by Superintendent Frossard (White) and is NOT entitled to any immunity herein, general or subject matter; BISD has been served with process herein by serving its Superintendent at his office, 3395 Harrison, Beaumont, Texas, 77702, and BISD has made answer herein.

### SUMMARY OF CAUSES OF ACTION

3.      This is a lawsuit brought against BISD under : Chapter 21, Tex. Lab. Code for legal, declaratory, and equitable relief resulting from disparate or

1

discriminatory treatment because of race and retaliation; the Texas Constitution

1876 Article One Sections 3, 3a, 8, and 19; and the United States Constitution

First, Fourth, Thirteenth, and Fourteenth Amendments for legal, declaratory, and

equitable relief, enforceable through Title 42 U.S.C. § 1983.

4.      The legal relief sought by Plaintiff is in the nature of monetary

damages in damages in an amount between $200,000.00 and $1,000,000.00.

5.      The equitable relief sought by Plaintiff is in the nature of declaratory

and injunctive relief that BISD violated the rights of Plaintiff to equal protection in

that she was treated less favorably that male emplyessexercise of free speech free

from retaliation by BISD, and free from deprivation of protected property interests

and arbitrary deprivation of a protected liberty interest by non-compliance with

policies of BISD and/or Texas statutes and or other wrongful acts in violation of

Plaintiff's rights to substantive due process.

**FACTS IN SUPPORT OF PLAINTIFF'S CAUSES OF ACTION**

6.      On or about September 2, 2016, Plaintiff was subjected to continuing

discriminatory suspension by BISD Superintendent Frossard when she was falsely

accused of stealing money given by parents for uniforms in the student activity,

SASSY SILKS, which she was supervising when the practice of BISD's

Superintendent Frossard was not to suspend or publicize allegations against male

employees accused of violations of policies regulating issues of alleged violations

2

of integrity by male supervisors of student activities. On November 10, 2016 Plaintiff filed original Charge of Discrimination # 460-2012-00562 with the EEOC/TWC.

7.    On September 6, 2016 , Channel 6 TV broadcast that Plaintiff was on leave pending the outcome of an investigation. (Exh. 1)

8.    On or about February 21, 2016, BISD provided to Channel 12 TV published a release that had as its link "Central High teacher on paid leave after stealing funds from flag team" (Ibid)

9.    Males treated more favorably by BISD's Superintendent were: Jeremy Gordon Band Director at South Park Middle School, reportedly stealing funds; Coach Flannigan at Wesbrook High School putting hidden cameras in the boys dressing room; Coach Marcus Seveat at Ozen High School stealing money; Brandon Chillow at Paul Brown Learning Center was reassigned to Vincent Middle School.

10.    Texas Education Code provides the following:

Sec. 11.1513. EMPLOYMENT POLICY. (a) The board of trustees of each independent school district shall adopt a policy providing for the employment and duties of district personnel. The employment policy must provide that: (1) the board employs and evaluates the superintendent; (2) the superintendent has sole authority to make recommendations to the board regarding the selection of all personnel other than the

superintendent, except that the board **may delegate final authority for those decisions to the superintendent;**

11. All faculty discipline which involved investigations into criminal activity and/or suspensions and/or termination of employment in BISD was the statutory duty of the Board of Trustees (however, BISD lost democratic status and became an executive agency's appointed body) or Board of Appointed Managers, and may be delegated by the Board of Managers to Sup't. Frossard.

12.    Plaintiff initially filed a Charge of Discrimination No. 460-2017-00562 **on November 10, 2016**, claiming disparate treatment "Race", and disparate treatment "Sex" discrimination, *later amended to include retaliation*, wherein Plaintiff  alleged that **she was falsely accused of misappropriation of funds and forging documents, and recommended by** , while a male band instructor who had been truthfully accused and had admitted to stealing funds had not been subjected to the public ridicule or announced involuntary separation of employment etc. Also, Ozen's male Head Coach was not terminated for refusing to turn in gate money on November 20, 2017 basketball tournament, and Westbrook's Coach Flannigan was allowed to resign and move on to Tomball ISD when he had been busted for putting a hidden video camera in the boys locker room to watch the undressed boys; Brandon Chillow who reportedly molested female students at Paul Brown Learning Center was transferred and reassigned to Vincent Middle School

where he continued his sexual predation and was finally publicized by a parent and fired.

13.    Plaintiff was retaliatorily recommended for involuntary separation from employment with BISD by White Superintendent John Frossard ("Frossard"), and after considering Frossard's Motion to non-renew Plaintiff, the BISD Board of Trustees arbitrarily adopted Frossard's recommendation subject to Plaintiff's challenge.

14.    Plaintiff challenged the Board's recommendation to non-renew her contract on the recommendation of Sup't. Frossard (hired by the Governor Rick Perry's Commissioner of Education's appointed Board of Managers), and received the right to take depositions of persons with knowledge of facts.

15.    On February 21, 2017, BISD's Sierra Fisher and Miles Bradshaw cross examined Plaintiff.

16.    On February 21, 2017, Plaintiff's counsel deposed BISD Administrator Calvin Rice.

17.    On February 21, 2017, Plaintiff's counsel deposed BISD Administrator Ron Jackson.

18.    On February 21, 2017, Plaintiff's counsel deposed BISD Administrator/Teacher Melanie Comeaux, Department Chair Career and Technical Education Department at then-named Central High School.

19. On February 22, 2017, Plaintiff's counsel deposed Mary Motley-Chase, Educator and parent of student in Sassy Silks Flag Corp, who under oath stated, inter alia, that she knew **Ms. Hasley whom she described as "[ at Depo. of Motley-Chase, Mary, (Page 9:11 to 9:12)]..Manipulative, hateful, very hateful, fake.  I can go on."**

20.     On February 22, 2017, Plaintiff's counsel was scheduled by notice to depose Brenda Hasley; however, Ms. Hasley failed to appear and was a no-show, being reported by Investigator Phillip Klein that when he served the subpoena on Sierra Fisher, Esq., Ms. Fisher saw the Hasley subpoena and volunteered for her employer, the BISD's lawyers, the KBS Law Group for BISD, to have Ms. Hasley present, even though she later claimed that she didn't have that authority because Hasley didn't work for BISD.  **Ms. Fisher did not keep her word, did not deliver the subpoena to Ms. Hasley, and Ms. Hasley did not appear to be deposed.**

21.     Nevertheless, after the deposition transcripts had been returned to the parties by the court reporter, BISD changed its position, and withdrew its non-renewal of Plaintiff if she would help BISD save face and reduce her contract for a year to Probationary status and promise not to sue BISD or its lawyers or administrators.

22.     Plaintiff mistakenly believed BISD's promises, and on March 3, 2017, Plaintiff and accepted a BISD Settlement, and told she would return to work on

6

March 8, 2017, but accept as a condition on keeping her job, unwarranted sanctions, all to fraudulently "save face" for Frossard and the Board of Managers.

23.     In the meantime, BISD Personnel Director Ms. Babino ("Babino") secretly, as to Plaintiff, met with BISD Chief of Police Flores and it is believed that BISD's legal Counsel Sierra Fisher, and the meeting's participants decided that BISD would implement a new stratagem believed to have created or fostered by the Texas Association of School Boards and its lawyer arm, Counsel of School Attorney's and press criminal charges whether founded or unfounded, arbitrary o reasonable, and end Plaintiff's career as a Texas Professional Educator outside of BISD., by filing Flores filing criminal charges against Plaintiff with Justice of the Peace Pct. 1 in Jefferson County on March 17, 2017 as a criminal charge of theft by public servant of funds.

24.     While Babino, Flores, and BISD carried out their agreed plan and Flores for BISD should file prospectively criminal charges against Plaintiff, Dr. Boutte unaware of BISD's appeared for work on March 8, 2017, March 9, 2017, and March 10, 2017.

25.     It is believed that BISD's lawyers or various officers for BISD explained to Babino and or the Assistant BISD Superintendent or the Superintendent that prospective acts or acts yet to be taken after March 3, 2017 were not released by the law and that only damages from previous or unknown

acts, acts which had occurred before the March 3, 2017 release was signed were released[1], and that any act causing harm to Plaintiff for acts taken after the date of the release would not have been released by Plaintiff despite the inclusion of the language e "known and unknown" in the release. [2]

27.     Nevertheless, it was decided that even though Hasley had not filed criminal charges against Plaintiff, and the SASSY SILKS were wearing uniforms since September 2016 as result of Plaintiff's using collected funds to pay for  the funds, and even though evidence garnered by the depositions taken on February 21-22, 2017 disestablished   any criminal act by Plaintiff, BISD bowed its governmental neck and plowed ahead to file false charges against Plaintiff.

28.     Assistant Chief of BISD Police, Joseph Malbrough, a Plaintiff's fellow church member at Antioch Missionary Baptist Church, notified Plaintiff that she was the subject of a warrant for her arrest and that is all he could say because he had been excluded from involvement in the matter.

---

1 "The Fifth Circuit has stated that employees may only release Title VII claims arising from "discriminatory acts or practices which antedate the execution of the release." Rogers, 781 F.2d at 454 (quoting Allegheny-Ludlum, 517 F.2d 826, 853 (5th Cir. 1975)) (emphasis added). " *Player v. Kansas City Southern Ry. Co.*, CIVIL ACTION No. 06-1980, at *7 (W.D. La. Nov. 16, 2011)
2 " *Crowell v. Housing Auth.*, 495 S.W.2d 887, 889 (Tex. 1973) ("It is generally held, for example, that a contract exempting an employer from all liability for negligent injury of his employees in the course of their employment is void as against public policy.")." *Castellow v. Swiftex Manufacturing Corp.*, 33 S.W.3d 890, 895-96 (Tex. App. 2000)

29.    The following week was Spring Break, and on or about March 18, 2017, Plaintiff was alerted by a Jefferson County Constable that she would have to surrender on arrest and make a $15,000.00 bond, or she would be arrested; both Television Channels 12 and 6 carried stories of Plaintiff's arrest and being charged with the crime.

30.    The Jefferson County District Attorney presented BISD's charges against Plaintiff to the Jefferson County Grand Jury and on March 22, 2017, and Plaintiff was indicted for theft by a public servant.

31.    When the Jefferson County District Attorney was advised of the depositions by Plaintiff, and the facts undergirding the charge against Plaintiff, he contacted BISD and was told to dismiss the criminal charges.

32.    On March 16, 2017, Plaintiff's counsel had written the BISD Board of Managers, to wit:

March 16, 2017

Dr. Jimmy Simmons, President of Board of Managers
Dr. John Frossard, Superintendent of BISD
3395 Harrison Avenue,
Beaumont, Texas 77706

RE: Alisa Boutte

Gentlemen:

I represent Ms. Alisa Boutte. Because she exercised protected expression/association, she was falsely accused on March 7, 2017 by Lillie Babino of having "intentionally circumvented the District's process for student activity accounting involving the Sassy Silks...knowingly collected funds from parents without following the appropriate process for depositing the funds with the campus book keeper."

9

Ms. Babino prompted the BISD Police Department to conduct a skewed investigation and make false conclusions, intentionally withheld from my client, and file a false felony complaint against my client filed with the **Jefferson County District Attorney's off**ice on March 7, 2017, felony to be filed with the Justice of the Peace Court Precinct 1 on March 9, 2017. Now, there is an outstanding felony warrant for Ms. Boutte's arrest, subject to her making a $15,000 bond.

Ms. Babino knew the charges against Ms. Boutte were false and yet she processed and spun them to cause a felony charge of Theft by a Public Servant to be filed against Ms. Boutte.

**Ms. Babino's motive was clearly malicious and meant to punish those disfavored by her friends, family, and/or herself.**

By this letter, Ms. Boutte demands:

1) The false criminal charges filed by BISD against her be withdrawn or caused to be dismissed:

2) **Ms. Babino's letter of March 7, 2017** be voided (the specific language of paragraph one of her letter): and

3) **Ms. Babino be removed from any responsibility over my clients' cases, especially Ms. Boutte.**

This should be attended to without delay.

Sincerely,

Larry Watts

33.     **On March 27, 2017, Texas Education Investigator Daniel Berumen notified Plaintiff that she had been accused by the Superintendent (or his Designee) of BISD of "Theft of Property" and was under investigation by the TEA and her name was publicly posted online as being under TEA investigation.**

34.     The criminal charges were dismissed on March 30, 2017 at the instance of BISD and the Jefferson County District Attorney.

35.     The charges were dismissed, but not before Plaintiff had been sullied and defamed beyond repair, and beyond expunction of charges;  for in any

application for future employment at a school district other than BISD or a charter school in which BISD was involved and or influential, Plaintiff would by principles of honesty be compelled to self-disclose the facts regarding her indictment, which would more likely than not be asked because of criminal background checks.

36.    Finally, TEA dismissed its investigation and removed Plaintiff's name from the internet as under TEA investigation.

37.    Four times Plaintiff applied for positions in Port Arthur ISD, and four times she was sought by PAISD to rejoin the agency, but each time, the groundless criminal allegations prompted and filed by BISD's Babino and Flores prevented Plaintiff's employment by PAISD.

38.    Frustrated, Plaintiff was sought by a local business and twice she applied only to be twice rejected because of a criminal background check.

39.    Plaintiff holds not only Bachelor's degree, but also a Master's degree and a terminal doctorate in education, yet BISD refused to promote her to positions for which she was the most qualified, and was the most qualified applicant for the positions she sought in house.

40.    Plaintiff was enslaved to BISD by reason of Babino and Flores's groundless and dismissed criminal charges against her.

41.    On March 13, 2018, Plaintiff filed her third Charge of Discrimination against BISD, 460-2018-02883..

42.    On February 22, 2018, Plaintiff learned that a female student was being victimized by her "Mother" and deprived of Social Security Benefits; Plaintiff so the "mother " could use the SSN payments to spend on marijuana. The 17-year-old student reported the matter to her teacher, Plaintiff.

43.    Plaintiff reported the matter to CIS, BISD Officer Spikes, and her Principal.

44.    In the meantime, on March 13, 2018, Plaintiff requested a Right to Sue letter from the TWC but did not receive the Notice, until further inquiry revealed that the TWC critical staff had undergone changes, and the TWC notice was faxed to Plaintiff's counsel on July 24, 2018.

45.    This Charge of Discrimination No. 460-2017-00562 (retaliation, sex, hostile work environment) was filed as a suit herein within 60 days of the date the illegal employment action  took place, and suit was filed  within 60 days of the date Plaintiff received her Notice of Right to File Civil Action on July 25th, 2018, and within two years of the date the discrimination took place.

46.    In retaliation for Plaintiff filing the EEOC Charge of Discrimination No. 460-2017-00562 **o**n November 10, 2016, She would not have been recommended by the Superintendent or his designee to the BISD Board for non-

renewal, and the Board would not have jumped on Board to propose her

involuntary separation from future employment in BISD.

47.    In retaliation for Plaintiff challenging the process of being fired or

involuntarily separated and taking depositions and establishing her innocence, the

"we won't be wrong!" BISD bunch would not have been forced to withdraw its

intended termination of Plaintiff's present and future employment and back off of

its false endorsement of claims that she had stolen parent money.

48.    If Plaintiff had been properly trained by BISD in its accounting and

BISD bookkeeping procedures related to Sassy Silk Uniform purchasing,  then

Plaintiff would never have been forced to say she had Not been trained opening her

to questions and accusations.

49.    If BISD had followed its own prescribed protocol and accounting

procedures related to Sassy Silk Uniform purchasing, then Plaintiff would never

have been placed in the vulnerable position by the parents.

50.   When BISD knowingly filed false criminal charges against Plaintiff it

denied Plaintiff due process and deprived her of her right to be guilty of a crime in

the absence of personal guilt.

51.    Further, when BISD knowingly filed false criminal charges against Plaintiff [3] it coerced Plaintiff to work for BISD or not in education at all, placing her "between the rock and the whirlpool"; in other words, BISD enslaved Plaintiff by placing an encumbrance on her career opportunities and limiting her to employment only in education to BISD, in violation of the Thirteenth and Fourteenth Amendment to the United States Constitution.

52. Plaintiff has exhausted her administrative remedies mandated by the Texas Legislature in that she: timely filed her Charge of Discrimination; she underwent an administrative investigation and received received a right to sue; timely filed her lawsuit herein, and had a prima facie case for both discriminatory employment practices and retaliation.

---

[3] Appellant argues that the release does not mention any intentional torts and that a release of an intentional tort cannot be enforced as a matter of public policy. "Generally, a contractual provision 'exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.'" *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 116 (Tex. 2014) (citing RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981)); *see also Fairfield Ins. Co v Stephens Martin Paving, LP*, 246 S.W.3d 653, 687 (Tex 2008) (Hecht, J, concurring); *Crowell v. Hous. Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex. 1973); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 21922 (Tex. 2002) (suggesting that a tariff or contract provision including a pre-injury waiver of liability for gross negligence or willful misconduct may be so unreasonable as to violate public policy). In *Zachry*, the supreme court concluded that a contract provision that purported to shield a party from liability for its own deliberate and wrongful conduct was void as against public policy. *See id.* This court has previously held that "pre-accident waivers of gross negligence are against public policy." *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (citing *Mem'l Med. Ctr. Of E. Tex. v. Keszler*, 942 S.W.2d 433, 435 (Tex. 1997) (per curiam) (suggesting preinjury waiver of liability for gross negligence is against public policy))" *Brennan v. Kaufman*, No. 14-19-00513-CV, at *9-10 (Tex. App. Aug. 24, 2021)

53.    BISD male faculty members who misappropriated funds, or sexually abused students, or secretly "filmed" male athletes in the locker room--except in the case of one Louis Chillow ( a repeat pedophile who was not fired when at Paul Brown Education Center, but was fired after he was reassigned and repeated his crimes at Vicent Middle School.

54.    Yet Plaintiff who had not misappropriated funds, had not engaged in sexual exploitation of students, had not engaged in voyeurism, was treated less favorably than male faculty and or student activity faculty-advisors, and although untrained as a student activity sponsor, Plaintiff was publicly recommended for termination, reported to Texas Education Agency for investigation and sanctions, publicly slandered, fraudulently induced to release BISD and its lawyers as well as others, and was subjected to criminal charges filed by BISD's police department, and freed on a $15,000.00 bond.

55.    BISD and Frossard arbitrarily, without explanation and or without declared  reasonable analysis, accused and administratively charged Plaintiff with forgery, and theft or diversion of student uniform funds for personal benefit and on those charges, and caused the Board of Trustees of the BISD to accept Frossard's recommendation and involuntarily separate plaintiff from employment with BISD, subject to her challenge.

15

56.    After depositions of Plaintiff and other persons, BISD counsel accepted a subpoena for Hasley and agreed to produce parent Brenda Hasley, but reneged and did not, resulting in Hasley not appearing to be deposed.

57.    The BISD Board of Trustees and/or BISD's lawyer Fisher arbitrarily without checking or investigating had actual, subjective awareness of the harm to Plaintiff's reputation and career and protected rights which were involved with their false charges against Plaintiff, but nevertheless proceeded with conscious indifference to her rights, safety, or welfare, and even though The Board had rescinded its publicly announced termination of Plaintiff for forgery, theft etc, instructed or ratified the instruction of the BISD Police Department to file criminal charges against Plaintiff.

58.    The Board had approved or ratified the filing of charges , even though the student funds collected by Plaintiff for SASSY SILK uniforms **had been delivered by her to her mother to deliver via her mother's credit card to the manufacturer** and the uniforms had been delivered in September and were being worn by the students.

59.    The District attorney when provide information by Plaintiff, after she had been arrested and made bond, dismissed the charges against her.

**CAUSE OF ACTION TWO - STATE CONSTITUTION CLAIMS**

60.    Article One, Section 8 of the Texas Constitution is broader in protective scope that the Federal First Amendment, and Plaintiff exercised protected speech when she challenged the Board's attempted to termination of her employment for false charges, and reported the discriminatory employment practices of BISD to the EEOC/TWC.

61.    Article One, Section 3A of the Texas Constitution guarantees equal rights for females and was violated by the Board of Trustees of the BISD in termination Plaintiff as a female while giving males better and more favored treatment even though Plaintiff and her male counterparts were supervised by the Superintendent, who was the only BISD officer by Texas Education Code who can make recommendations for adverse personnel actions such as suspension, or termination or non-renewal, and the males who were more favored were legal comparators.

62.    Article One, Section 19 of the Texas Constitution guarantees that no person shall be subjected to arbitrary punitive action by the Board of Trustees or any policymaker or decisionmaker of Texas agencies under color of law, and the Board of Trustees of the BISD acted arbitrarily and approved or ratified the arbitrary actions of Frossard who by law within certain spheres of BISD operations was himself a BISD policymaker as well as a decisionmaker.

63.    Plaintiff was arbitrarily accused and processed for termination, subjected to false criminal charges which were dismissed by the District Attorney of Jefferson County.

64.    Plaintiff was deprived of substantive due course of law.

**UNITED STATES CONSTITUTION, FIRST, FOURTH, THIRTEENTH AND FOURTEENTH AMENDMENT CLAIMS, TITLE 42 USC 1983**

65.    The Texas Civil Practice and Remedies Code provides that "[i]f a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a **new, distinct, or different transaction or occurrence**." Tex. Civ. Prac. & Rem. Code § 16.068 (West 2017). Moreover, the Texas statute supports the Federal Rule that provides "[a]n amendment to a pleading relates back to the date of the original pleading when: (B) the amendment asserts a **claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.**" Fed. R. Civ. P. 15(c)(1).

66.    Pursuant to Tex. Civ. Prac.  Rem. Code § 16.068, Dr. Boutte asserts a

Title 42 U.S.C. § 1983 claim which arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original and amended pleadings.

67.    The Fourteenth Amendment of the United States Constitution guarantees equal rights for females and was arbitrarily without explanation violated by the Board of Trustees of the BISD in in its actions against Plainiff as a female while giving males better and more favored treatment even though Plaintiff and her male counterparts were supervised by the Superintendent, and similarly situated, legal comparators.  The Superintendent is the only BISD officer by Texas Education Code who can make recommendations for adverse personnel actions such as suspension, or termination or non-renewal.

68.    The Thirteenth Amendment protects Plaintiff against enslavement of persons, yet by filing criminal charges against Plaintiff and thereby forcing Plaintiff to answer any application for public education employment and truthfully admitting to having been charged by the Board and the criminal justice system with a crime, she reasonably prevents herself from being employed by any agency except the BISD. Their lawyers and TASB knew and knows that and pursue  the strategy of charging unwanted employees with crimes to cause "red labeling" or "blacklisting", whatever color for rejection by agencies other than themselves they might choose.

69.    The Fourteenth Amendment guarantees that no person shall be subjected to arbitrary punitive action by the Board of Trustees or any policymaker or decisionmaker of Texas agencies under color of law, and the Board of Trustees of the BISD acted arbitrarily and approved or ratified the arbitrary actions of Frossard who by law within certain spheres of BISD operations was himself a BISD policymaker as well as a decisionmaker.

70.    Plaintiff was arbitrarily accused and processed for termination, subjected to false criminal charges which were dismissed by the District Attorney of Jefferson County, therefore unconstitutional malicious prosecution.

71.    Plaintiff was deprived of substantive and procedural due process of law.

## TRIAL BY JURY

72.    Plaintiff seeks a TRIAL BY JURY as is her right under the Texas and Federal Constitutions.

## PRAYER

73.    After trial by jury, Plaintiff  prays that the district court enter a judgement against BISD for deprivation of rights secured to her by the Tex. Lab. Code Chapt. 21, and Title 42 USC §§ 1983 and 1988 as follows:

a.  Economic damages;

20

b.  Non-economic damages including for mental anguish and physical injury; and

c.  Declaratory relief whereby BISD would be declared to have violated the constitutional rights secured to Plaintiff, enjoined to publicly apologize, and expunge Plaintiff's files, and cease from further violation of her rights to protected liberty and or property interests.

d.  Attorney's fees, and costs of court, prejudgment interest, and all other relief to which Plaintiff is entitled.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/S/ LARRY WATTS
Laurence (Larry) Wade Watts
TBN 20981000
P.O. Box 2214
Missouri City, Texas 77459
Ph. (281) 431-1500
Fax. (877) 797-4055
larry@wattsjustice.attorney

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the document has been served on

opposing counsel on this the 31[th] day of October, 2023, by filing with the clerk's

electronic filing scheme.


/S/ LARRY WATTS