**UNITED STATES DISTRICT COURT**     **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ALISA BOUTTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:23-CV-392 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Beaumont Independent School District's ("BISD")

Motion for Summary Judgment (#25).  Plaintiff Alisa Boutte ("Boutte") filed a response in

opposition (#34), and BISD filed a reply (#37).  Having considered the motion, the submissions

of the parties, the record, and the applicable law, the court is of the opinion that BISD's motion

should be granted.

I.    Background

Boutte's claims stem from her role as the sponsor of the "Sassy Silks" flag and dance

group at BISD's Central High School ("CHS").  Boutte began serving as the sponsor for the Sassy

Silks after BISD hired her as a special education teacher at CHS for the 2015-2016 school year.

Community volunteer Brenda Hasley ("Hasley"), who was not employed by BISD, assisted Boutte

with her duties as sponsor.  Prior to the beginning of the 2016-2017 school year, Boutte and

Hasley met with the parents of the Sassy Silks members to discuss forming a parent booster club.

The parents agreed to form the booster club, and at the following meeting, Boutte planned to

collect the fees from the parents to purchase the Sassy Silks members' uniforms for the 2016-2017

school year.  Hasley was unable to attend the meeting where Boutte collected the fees and issued receipts to the parents.  During a telephone call, Hasley informed Boutte that, because the booster club was a separate entity from BISD and Boutte was a BISD employee, Boutte's name could not be on the receipts.  Boutte testified that Hasley advised her that instead, Hasley's name "ha[d] to be on the receipts because [Hasley was] not a district employee."  Interpreting Hasley's instructions to mean that she needed to sign Hasley's name, Boutte accordingly wrote "B. Hasley" on the receipts.

On September 2, 2016, BISD placed Boutte on paid administrative leave pending the outcome of an investigation.  In its notice to Boutte (#25-7), BISD informed her that it was "investigating allegations that [Boutte] deliberately fail[ed] to follow the District's established guidelines and procedures for depositing activity funds [she] collected from students."  The following month, BISD's Internal Audit Department provided CHS Principal Ronald Jackson ("Principal Jackson") with a report (#25-8) concluding that Boutte had "intentionally circumvented district procedures by collecting funds from parents without the appropriate training, approvals, and coordination with the principal, student activities director, or the bookkeeper."  As a result, the BISD Board of Managers ("Board") voted on December 15, 2016, to propose the termination of Boutte's employment contract for the 2016-2017 school year.  BISD notified Boutte that the Board's proposal to terminate her contract was "based upon [her] failure to comply with the District's Student Activity Funds Manual and booster club procedures, and other deficiencies documented" (#25-10).  Boutte appealed the proposed termination of her employment contract, and her appeal was subsequently set for a hearing before a Texas Education Agency ("TEA") Certified Independent Hearing Examiner.

Before the TEA hearing could occur, however, BISD and Boutte executed an Agreement and Full and Final Release ("Settlement Agreement") (#25-3) on March 3, 2017, resolving Boutte's appeal.  In the Settlement Agreement, Boutte agreed, in pertinent part, to:

> release[], acquit[] and forever discharge[] BISD, its past, present, and future Board of Managers, trustees, officers, employees, representatives, attorneys, and agents (all in their official and individual capacities) (collectively, "BISD Parties") from and against any and all claims, demands and causes of action of whatever nature, known or unknown, past, present or future, including but not limited to claims for physical injury, mental injury, personal embarrassment, damages to her reputation, and any rights, which Boutte may have under any federal or state constitutions, laws, rules, regulations, or public policy, arising out of the employment relationship between the parties through the effective date of this agreement, including, but not limited to rights and claims under the United States Constitution, the Constitution of the State of Texas, 42 U.S.C. § 1983, . . . arising out of or otherwise related to Boutte's employment with BISD and the acts or omissions of BISD Parties related to the Proceeding . . . .

The Settlement Agreement further provides that it "applies to all claims, damages, and injuries known and anticipated as well as those not known or anticipated" and that the consideration in the Settlement Agreement is "accepted as a full, complete, and final compromise of all claims that were or could have been asserted in connection with Boutte's employment and/or related to the acts or omissions of the BISD parties related to the Proceeding through the effective date of this Agreement."  In exchange, BISD agreed to withdraw its proposed termination and allow Boutte to remain an employee of BISD on a probationary contract for the remainder of the 2016-2017 school year.  On March 21, 2017, the BISD Board voted to withdraw its proposal to terminate Boutte's contract and to approve and ratify the Settlement Agreement.

Meanwhile, as the BISD Board was contemplating the termination of Boutte's contract, the BISD Police Department had been conducting a criminal investigation of Boutte.  In September 2016, ten days after BISD placed Boutte on paid administrative leave, Hasley filed an offense

3

report with the BISD Police Department, alleging that Boutte had forged Hasley's name on the receipts issued to the Sassy Silks parents.[1]   The BISD Police Department continued the investigation by meeting with and obtaining sworn statements from the parents of Sassy Silks members, as well as Principal Jackson.  Upon the conclusion of the investigation, on February 28, 2017—three days before Boutte and BISD executed the Settlement Agreement—BISD Officer Joseph LaRive ("Officer LaRive") submitted a probable cause affidavit (#25-2) to the Jefferson County District Attorney's Office, requesting that Boutte be charged with the state jail felony of theft of property by a public servant.  Subsequently, on March 15, 2017—less than a month after Boutte and BISD executed the Settlement Agreement—a Jefferson County grand jury indicted (#25-4) Boutte for the offense of Theft by a Public Servant, in violation of TEX. PENAL CODE § 31.03(f).[2]  Less than three weeks later, the criminal charges against Boutte were dismissed.

---

[1] In her Verified Statement (#34-28) attached to her response, Boutte claims that BISD "misrepresented" the date of Hasley's criminal offense report.  Specifically, Boutte argues that the offense report (#25-2) denotes that it was received on March 1, 2017.  While the court agrees that the "Misdemeanor Investigative Summary" page of the report bears a stamp noting that it was "RECEIVED" on March 1, 2017, the court observes that the paragraph at the bottom of this summary page states that "On 9-12-2016, the Complainant (C), Brenda Hasley . . . reported that the D, a teacher at Cental H.S., had signed the C's signature on some receipts for cash paid to the D by some parents."  Additionally, the Probable Cause Affidavit attached to the Misdemeanor Investigative Summary provides that "On September 12, 2016, BISD PD Officer F. Doffoney took an offense report in reference to a forgery.  Complainant Brenda Hasley . . . reported that Teacher Alisa Boutte . . . had signed Hasley's signature on some receipts for cash paid to Boutte by some parents."  Thus, the evidence cited by Boutte confirms that, contrary to her assertion, Hasley filed her offense report with the BISD Police Department on September 12, 2016.

[2] The parties dispute the date of Boutte's indictment.  BISD's recitation of "Undisputed Facts" states that Boutte was indicted on March 22, 2017, the date that appears at the top of the Indictment, immediately above the District Clerk's signature.  Boutte asserts, on the other hand, that the grand jury indicted Boutte on March 15, 2017, the date that appears next to the phrase "Date of Indictment." Nevertheless, it is undisputed that Boutte was indicted after both she and BISD had executed the Settlement Agreement on March 3, 2017.

During the time that she was under indictment, Boutte continued to report to work at BISD. Following the dismissal of her criminal charges, Boutte remained employed at BISD through the 2022-2023 school year.  She then voluntarily resigned to teach at a charter school within BISD.

Boutte initiated the present litigation over five years ago, when she filed her Original Petition in the 136th Judicial District Court of Jefferson County, Texas, in September 2018, alleging state-law claims of employment discrimination and retaliation under Chapter 21 of the Texas Labor Code against BISD.  She later amended her petition to include claims under the Texas Constitution.  Then, in October 2023, Boutte filed her Third Amended Original Petition, asserting, for the first time, federal claims under 42 U.S.C. § 1983.  Specifically, in addition to her state-law claims, Boutte contended that BISD had violated her rights under the First, Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution.  BISD timely removed the action to this court on the basis of federal question jurisdiction and supplemental jurisdiction.  *See* 28 U.S.C. §§ 1331, 1367.  Boutte subsequently filed her First Amended Complaint, in which she continues to assert her state-law claims as well as her federal claims under Section 1983.  Now, BISD seeks summary judgment on all of Boutte's claims.

II.   <u>Analysis</u>

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party.  *See Union Pac. R.R. Co. v. Palestine*, 41 F.4th 696, 703 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 579 (2023); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010).  Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Union Pac. R.R. Co.*, 41 F.4th at 703; *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish*, 917 F.3d at 378; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren*, 820 F.3d at 771; *accord MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021). The moving party, however, "need not negate the elements of the nonmovant's case." *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see Savoy v. Kroger Co.*, 848 F. App'x 158, 160 (5th Cir. 2021).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific

6

facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Clark v. CertainTeed Salaried Pension Plan*, 860 F. App'x 337, 340-41 (5th Cir. 2021); *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 410 (5th Cir. 2020). The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255); *Seigler*, 30 F.4th at 476; *Batyukova*, 994 F.3d at 724; *Lyons*, 964 F.3d at 302.

Furthermore, the court's obligation to draw reasonable inferences "does not extend so far as to allow a wholly 'unreasonable inference' or one which amounts to 'mere speculation and conjecture.'" *Mack v. Newton*, 737 F.2d 1343, 1351 (5th Cir. 1984) (quoting *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877, 879 (5th Cir. 1977)); *accord McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 432 (5th Cir. 2020); *Batyukova*, 994 F.3d at 724 ("'Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

legalistic argumentation' will not survive summary judgment." (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))); *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) ("If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468-69 (1992))); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) ("[O]nly reasonable inferences in favor of the nonmoving party can be drawn from the evidence." (citing *Eastman Kodak Co.*, 504 U.S. at 468 n.14)). "[S]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *accord Allaudin v. Perry's Rests., Ltd.*, 805 F. App'x 297, 299 (5th Cir. 2020); *Acadian Diagnostic Lab'ys, L.L.C.*, 965 F.3d at 410 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Heath v. Elaasar*, 763 F. App'x 351, 354 (5th Cir. 2019).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Lyons*, 964 F.3d at 302; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "[W]here the nonmoving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." *Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 521 (5th Cir. 2018) (quoting *Nichols v. Enterasys Networks, Inc.*, 595

8

F.3d 185, 188 (5th Cir. 2007)); *see Phillips v. Sanofi U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 710 (5th Cir. 2021); *Apache Corp.*, 626 F.3d at 793.  In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)); *accord Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023); *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 288 (5th Cir. 2020).

A.    Boutte's Abandoned State-Law Claims

BISD seeks summary judgment on all of Boutte's claims.  In her response, Boutte explicitly "abandons and voluntarily dismisses any formerly asserted [TCHR] claims arising under the Texas Labor Code since at this juncture, this is not an employment case."  Where a plaintiff withdraws or abandons her claim in response to a defendant's motion for summary judgment, courts generally grant summary judgment to the defendant on the abandoned claim.  *See Ellis v. Klawonn*, No. 4:21-CV-00977-SDJ-CAN, 2023 WL 3993043, at *4 (E.D. Tex. June 8, 2023) (concluding that summary judgment was proper on claims that the plaintiffs had "withdraw[n] (or otherwise abandon[ed])" (citing *Newton v. State Farm Lloyds*, No. 4:21-CV-00322-SDJ-CAN, 2022 WL 2195464, at *2 (E.D. Tex. May 17, 2022), *adopted by* No. 4:21-CV-322, 2022 WL 2195019 (E.D. Tex. June 17, 2022))); *Hill v. Concho Res., Inc.*, 634 F. Supp. 3d 359, 362 (W.D. Tex. 2022) (granting summary judgment to the defendants on claims that the plaintiff sought to withdraw in his response to the defendants' summary judgment motion).

9

In addition, in her responsive brief, Boutte does not address her causes of action under the Texas Constitution and is deemed to have abandoned these grounds for recovery.   The United States Court of Appeals for the Fifth Circuit's "well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir.) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)), *cert. denied*, 144 S. Ct. 348 (2023); *see Normore v. Dall. Ind. Sch. Dist.*, 677 F. Supp. 3d 494, 525 (N.D. Tex. 2023) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned." (citing *Black*, 461 F.3d at 588 n.1; *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983))). Thus, because she did not brief these claims in her responsive brief, any claims asserted by Boutte that allege violations of the Texas Constitution have been waived and are no longer at issue.  *See Nichols*, 495 F.3d at 190 (stating that inadequately briefed issues are considered waived); *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 393 n.28 (5th Cir. 2020); *Shipman v. Sowell*, 766 F. App'x 20, 25 (5th Cir. 2019); *accord United States v. Stanley*, 595 F. App'x 314, 317 (5th Cir. 2014) (stating that a party's failure to raise an issue in response to a motion summary judgment is a waiver, and the subsequent filing of a motion for reconsideration does not abrogate the waiver); *Moore v. Delta Airlines, Inc.*, No. 3:10-CV-2241, 2012 WL 685414, at *5 (N.D. Tex. Mar. 1, 2012) (holding that the plaintiff abandoned any claims not addressed in her summary judgment response (citing *Black*, 461 F.3d at 588 n.1)); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 762-63 (S.D. Tex. 2011) ("Plaintiffs' summary judgment response has abandoned

the claim, offering no briefing on the subject."). Therefore, dismissal of these claims is appropriate.

In the case at bar, Boutte has abandoned her state-law claims against BISD, and BISD has met its burden of demonstrating that no genuine dispute of material fact exists as to these claims. Accordingly, BISD is entitled to summary judgment on Boutte's claims arising under the Texas Labor Code and the Texas Constitution.[3]   Only Boutte's Section 1983 claims remain.

### B.   BISD Is Immune from a Fraudulent Inducement Claim

In her response brief, Boutte makes several statements that could be construed as an attempt to allege, for the first time, a fraudulent inducement claim against BISD. In particular, Boutte explains that accrual of a "a tort cause of action . . . can be deferred in causes of action involving fraud and fraudulent concealment." BISD argues that, to the extent Boutte intends to assert a fraudulent inducement claim at this juncture, it is immune from such intentional tort claims. The court agrees.

In Texas, it has long been recognized that sovereign immunity, unless waived, protects the State, its agents, and its officials from lawsuits for damages. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 839 (Tex. 2018); *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009). A governmental

---

[3] Notably, Boutte states that she "voluntarily dismisses" her claims arising under the Texas Labor Code. To the extent Boutte seeks to dismiss voluntarily her claims under Federal Rule of Civil Procedure 41(a)(2), her efforts are unavailing. *See, e.g.*, *Hill*, 634 F. Supp. 3d at 362 (explaining that, where the plaintiff sought to withdraw certain claims in his response to the defendants' motion for summary judgment, the plaintiff could "not unilaterally withdraw his claims to avoid a negative judgment" because under Rule 41(a)(2), "a plaintiff may not voluntarily dismiss a claim after a summary judgment motion has been filed without first receiving the Court's consent"). Likewise, in the case at bar, Boutte has neither sought nor received the court's consent for the dismissal of her claims. Accordingly, Boutte's claims are not eligible for voluntary dismissal under Rule 41(a)(2).

entity has sovereign immunity and cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) ("The state or governmental unit can be sued only if the Legislature waives immunity in 'clear and unambiguous language.'" (citing TEX. GOV'T CODE § 311.034)); *accord Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018); *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Annab*, 547 S.W.3d at 612 (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011)); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008); *see* TEX. CIV. PRAC. & REM. CODE § 101.001(3) (defining "governmental unit"); *Calhoun v. Villa*, 761 F. App'x 297, 300 (5th Cir. 2019); *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703 (Tex. 2019). "Governmental immunity defeats a court's jurisdiction." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015); *accord Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). When asserting a claim against a governmental unit, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Ryder Integrated Logistics, Inc.*, 453 S.W.3d at 927 (citing *Whitley*, 104 S.W.3d at 542); *accord Calhoun*, 761 F. App'x at 300; *Annab*, 547 S.W.3d at 612-13.

The Texas Legislature enacted the Texas Tort Claims Act ("TTCA") to waive sovereign immunity in certain limited and narrowly defined circumstances. *See* TEX. CIV. PRAC. & REM. CODE § 101.025 ("Sovereign immunity to suit is waived and abolished to the extent of liability

12

created by this chapter."). School districts, as political subdivisions of the state, fall within the scope of the act. *Id.* § 101.001(3)(B); *see Bickford v. Boerne Indep. Sch. Dist.*, No. 5:15-CV-1146-DAE, 2016 WL 3033778, at *3 (W.D. Tex. May 26, 2016) (citing *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978)). The TTCA does not, however, waive immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057; *Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017) (quoting *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009)); *Gordon*, 434 S.W.3d at 589; *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001); *Jones v. Tex. Dep't of Crim. Just.*, 318 S.W.3d 398, 404 (Tex. App.—Waco 2010, no pet.). The statute provides:

> This chapter does not apply to a claim:
>
> > (1)    based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
> >
> > (2)    arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.

TEX. CIV. PRAC. & REM. CODE § 101.057. "This provision shields [governmental units] from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective." *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (citations omitted); *see Goodman*, 571 F.3d at 394. Hence, claims arising out of an intentional tort such as fraud are not actionable under the TTCA. Indeed, "Texas courts have acknowledged the lack of consent by the State to be sued for fraud." *County of El Paso v. Mijares*, 630 S.W.3d 169, 174-75 (Tex. App.—El Paso 2020, pet. denied) (*citing Ethio Express Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 758 (Tex. App.—Houston [14th Dist.]

2005, no pet.); *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex. App.—Fort Worth 2001, no pet.)); *see City of Richardson v. Cannon*, No. 05-18-00181-CV, 2018 WL 6845240, at *2 (Tex. App.—Dallas Nov. 16, 2018, no pet.) ("Fraud is an 'intentional tort' for which the TTCA provides no waiver of immunity." (quoting *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas 2013, no pet.))).  Governmental immunity thus provides a sufficient ground for courts to dismiss or grant summary judgment on plaintiffs' fraud claims against school districts.  *See Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-00814, 2024 WL 1329917, at *3 (E.D. Tex. Mar. 27, 2024) (dismissing with prejudice the plaintiffs' fraud claims against a school district because "intentional conduct, no matter how it is [pleaded], falls under the TTCA's sovereign immunity waiver exception" (quoting *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021))); *Aetna Life Ins. Co. v. Kaufman Indep. Sch. Dist.*, No. 3:99-CV-1085-G, 2000 WL 284194, at *5 (N.D. Tex. Mar. 15, 2000) (granting summary judgment to the defendant school district on the plaintiff's claim of fraudulent inducement because it did not fall within the TTCA's "narrow waiver of sovereign immunity").  As a result, the court agrees with BISD's assertion that any attempt by Boutte to allege a fraudulent inducement claim against BISD is barred by the doctrine of governmental immunity.

### C.    Boutte's Section 1983 Claims

In her remaining claims, Boutte asserts that, pursuant to 42 U.S.C. § 1983,  BISD is liable for violating her constitutional rights under the First, Fourth, Thirteenth, and Fourteenth Amendments.  In particular, Boutte claims that she "exercised protected speech" under the First Amendment "when she challenged the Board's attempted to [sic] termination of her employment for false charges and reported the discriminatory employment practices of BISD to the [Equal

Employment Opportunity Commission]/[Texas Workforce Commission]."[4]  She appears to allege that BISD's role in prompting her indictment was a form of retaliation for her "protected speech." Boutte next asserts a malicious prosecution claim under the Fourth Amendment, complaining that she "was arbitrarily accused and processed for termination" and "subjected to false criminal charges which were dismissed . . . therefore unconstitutional malicious prosecution."  Regarding the Thirteenth Amendment, Boutte claims that BISD's "knowingly fil[ing] false criminal charges against [Boutte]" violated her constitutional rights by "enslav[ing] [Boutte] by placing an encumbrance on her career opportunities and limiting her to employment only in education to BISD."  As for her Fourteenth Amendment claims, Boutte first alleges that BISD violated the Equal Protection Clause by "giving males better and more favored treatment even though Plaintiff and her male counterparts were supervised by the Superintendent, and similarly situated, legal comparators."[5]  Finally, Boutte conclusorily claims that she "was deprived of substantive and procedural due process of law."

In the pending motion, BISD argues that Boutte's Section 1983 claims are barred by the parties' Settlement Agreement, and in the alternative, that Boutte cannot adduce sufficient evidence to support her Section 1983 claims.  The court concludes that, even assuming *arguendo* that the

---

[4] Notably, this explanation of Boutte's First Amendment claim is articulated only in the "State Constitution Claims" section of Boutte's operative complaint.  Although the heading for her "United States Constitution . . . Claims" references the First Amendment, she does not explain the basis of her federal First Amendment claim under this particular heading.  Nevertheless, because Boutte appears to continue to defend her First Amendment claims in her response, despite clarifying that she is only pursuing claims "for deprivation of rights secured to her by the Constitution of the United States," the court assumes that she intends to assert a parallel First Amendment claim under the federal constitution.

[5] It is unclear whether Boutte's Equal Protection claim relates to her termination proceedings, including BISD's proposal to terminate her employment contract, or rather to BISD's role in requesting Boutte's indictment.  In any event, regardless of the intended focus of her Equal Protection claim, Boutte fails to raise a genuine dispute of material fact as to her ability to establish BISD's liability under *Monell*.

15

Settlement Agreement does not preclude Boutte from pursuing her Section 1983 claims,[6] BISD is entitled to summary judgment because Boutte fails to produce sufficient evidence to create a genuine dispute of material fact as to the existence of a "policy or custom" attributable to BISD or its Board with regard to any of her Section 1983 claims.

### 1.    General Considerations

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017); *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708

---

[6] To the extent Boutte's Section 1983 claims arise not from her termination proceedings, but from BISD's role in requesting her indictment—as most, if not all, of her claims appear to do—the court is doubtful that the Settlement Agreement bars these claims. Importantly, the parties executed the Settlement Agreement on March 3, 2017, and Boutte was not indicted until nearly two weeks later, on March 15, 2017. Although BISD makes much of the fact that Boutte agreed to discharge "any and all claims . . . past, present or future" against BISD, the court notes that this paragraph of the Settlement Agreement concludes by specifying that it is referencing such claims "arising out of or otherwise related to Boutte's employment with BISD and the acts or omissions of BISD related to the Proceeding." The Settlement Agreement defines the "Proceeding" as "a TEA hearing pending styled, *Beaumont ISD v. Alisa Boutte*, TEA Docket No. 041-LH-01-2017." Notably, the TEA hearing did not encompass Boutte's indictment (or BISD's role in purportedly "prompting" Boutte's indictment), as Boutte had not yet been indicted at the time the TEA hearing was pending. Furthermore, another section of the Settlement Agreement states that the parties agreed that it served as a "full, complete, and final compromise of all claims that were or could have been asserted in connection with Boutte's employment and/or related to the acts or omissions of the BISD parties related to the Proceeding through the effective date of this Agreement." The court observes that Boutte's Section 1983 claims arising from BISD's role in her indictment did not accrue—and thus could not "have been asserted" prior to "the effective date of [the Settlement] Agreement"—until she received notice of the indictment or the indictment was dismissed. *See Moon v. City of El Paso*, 906 F.3d 352, 358 (5th Cir. 2018) (explaining that, for claims brought under § 1983, "the critical inquiry for accrual is 'when the plaintiff knows or has reason to know of the injury which is the basis of the action'" (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993))); *Morgan v. Chapman*, 629 F. Supp. 3d 616, 625 (S.D. Tex. 2022) ("A claim for malicious prosecution under the Fourth Amendment 'does not accrue until the prosecution ends in the plaintiff's favor.'" (quoting *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018))). In any event, because the court concludes that all of Boutte's Section 1983 claims fail on *Monell* grounds, the court need not determine whether the Settlement Agreement bars her claims.

(2003); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 371 (5th Cir. 2018); *Orr*, 844

F.3d at 491-92.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "Section 1983 'is not

itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights

elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*,

443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989);

*Bradley*, 958 F.3d at 395 n.39; *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013).

A claim under 42 U.S.C. § 1983 has two foundational elements:  "a violation of the

Constitution or of federal law, and . . . that the violation was committed by someone acting under

color of state law."  *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Rich

v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019)); *accord Gomez v. Galman*, 18 F.4th 769, 775

(5th Cir. 2021); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687-88 (5th Cir.

2017).  Thus, for Boutte to recover, she must show that BISD deprived her of a right guaranteed

by the Constitution or the laws of the United States.  *Manuel*, 580 U.S. at 370 (citing *Albright*,

510 U.S. at 271); *Baker*, 443 U.S. at 139; *Bradley*, 958 F.3d at 395; *Doe ex rel. Magee v.

Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854-55 (5th Cir. 2012).  "[T]he threshold

inquiry in a § 1983 suit . . . requires courts to 'identify the specific constitutional right' at issue."

*Manuel*, 580 U.S. at 370 (quoting *Albright*, 510 U.S. at 271); *see Bradley*, 958 F.3d at 395 n.39;

*Sepulvado*, 729 F.3d at 420 n.17.  "After pinpointing that right, courts still must determine the

elements of, and rules associated with, an action seeking damages for its violation." *Manuel*, 580

U.S. at 370 (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

 Moreover, to hold BISD liable under the statute, Boutte must adduce facts demonstrating

BISD's participation in the alleged wrong.  A § 1983 plaintiff must establish not only a violation

of one of her constitutional rights but "a direct causal connection . . . between [BISD's] policy and

the alleged constitutional deprivation." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task

Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268,

1281 (5th Cir. 1992)); *see Est. of Bonilla ex rel. Bonilla v. Orange County*, 982 F.3d 298, 312

(5th Cir. 2020) (quoting *Fraire*, 957 F.2d at 1281); *Piotrowski v. City of Houston*, 237 F.3d 567,

580 (5th Cir. 2001).

   2. <u>*Monell* Liability</u>

 The United States Supreme Court has expressly held that local governmental entities may

be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements

or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978);

*see Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018); *Griggs v. Chickasaw County*, 930

F.3d 696, 704 (5th Cir. 2019); *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016).   A

governmental entity may also be sued "for constitutional deprivations visited pursuant to

governmental 'custom' even though such a custom has not received formal approval through the

body's official decision making channels." *Monell*, 436 U.S. at 690-91; *Stem*, 813 F.3d at 210;

*see Sanchez v. Young County*, 956 F.3d 785, 792-93 (5th Cir. 2020).   The Fifth Circuit has

defined an official policy or custom as:

1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)); *accord Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022); *ODonnell v. Harris County*, 892 F.3d 147, 155 (5th Cir. 2018). Section 1983 claims against a governmental entity based on the customs and policies of that entity are commonly referred to as *Monell* claims.

When a § 1983 suit is brought against a governmental entity, a plaintiff "must plead facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; (4) and the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *accord Jackson*, 852 F. App'x at 134; *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010). Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski*, 237 F.3d at 579; *accord M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 254 (5th Cir. 2018); *Martinez v. Maverick County*, 507 F. App'x 446, 448 (5th Cir. 2013) ("wide-ranging conclusory allegations" fail to identify an injury-causing policy).

For § 1983 liability to attach, a plaintiff must demonstrate three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694) (citing *Piotrowski*, 237 F.3d at 578); *see Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 623 (5th Cir. 2018). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Culbertson*, 790 F.3d at 628 (quoting *Piotrowski*, 237 F.3d at 578); *accord James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). Therefore, to prevail under § 1983, Boutte must point to more than the isolated unconstitutional actions of a BISD employee; instead, she "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Piotrowski*, 237 F.3d at 578).

A "policy" can be demonstrated in three different manners. The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *accord ODonnell*, 892 F.3d at 155 (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *Baker v. City of McKinney*, No. 4:21-CV-00176, 2022 WL 3704301, at *8 (E.D. Tex. Aug. 26, 2022). The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett*, 728 F.2d at 768; *accord ODonnell*, 892 F.3d at 155; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010); *Baker*, 2022 WL 3704301, at *8. A third type of "policy" stems from "a final decisionmaker's adoption of a course of action 'tailored to

20

a particular situation and not intended to control decisions in later situations.'" *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997) (quoting *Pembaur*, 475 U.S. at 481); *accord Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson,* 817 F.3d 163, 165 (5th Cir. 2016); *In re Foust*, 310 F.3d 849, 862 (5th Cir. 2002); *Baker*, 2022 WL 3704301, at *8.

In any event, "[m]unicipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *see Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004); *Williams*, 352 F.3d at 1014. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 405 (citing *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989)). "These requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.'" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 415); *accord Piotrowski*, 237 F.3d at 580.

Moreover, a governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385; *see James*, 577 F.3d at 617; *Piotrowski*, 237 F.3d at 580. The Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404; *see Johnson*, 379 F.3d at 310.  "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights."  *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 415; *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 2277504, at *7 (N.D. Tex. June 23, 2022).  "*Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation."  *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694); *see City of Canton*, 489 U.S. at 389; *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).  Hence, "[the] plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'"  *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)); *see Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018); *Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir. 2004); *accord Groden*, 826 F.3d at 283.

Nevertheless, "[t]his connection must be more than a mere 'but for' coupling between cause and effect."  *Johnson*, 379 F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281); *see James*, 577 F.3d at 617; *Vess*, 2022 WL 2277504, at *7.  The plaintiff must also establish that a governmental policy or custom was the proximate cause of the injuries sustained.  *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980) (holding that "[i]n order for a governmental unit to be liable under § 1983, the policy or custom must . . ., by the very terms of the statute, be a proximate cause of the constitutional violation"); *accord Johnson*, 379 F.3d at 311.  Thus, "[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*.  Rather, the policy must be the proximate cause of the section 1983 injury."  *Van Ort v.*

*Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996); *see Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005).

In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411; *James*, 577 F.3d at 617. Thus, plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove a direct causal link between the [governmental] policy and the constitutional deprivation; they then must establish that [BISD's Board] consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." *Snyder*, 142 F.3d at 795-96 (citing *City of Canton*, 489 U.S. at 389); *see Johnson*, 379 F.3d at 309-10. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] action." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 410; *Prince*, 423 F. App'x at 451 (recognizing that the existence of one or two prior incidents is generally insufficient to show that a governmental entity was deliberately indifferent to the plaintiff's rights). Mere negligence is an insufficient ground upon which to base a claim for governmental liability under § 1983. *Watkins*, 308 F. App'x at 784 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 624 (1999)).

Furthermore, a governmental entity may not be held liable for the acts of its employees under a theory of *respondeat superior*. *Monell*, 436 U.S. at 694; *Groden*, 826 F.3d at 283; *Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429, 437-38 (5th Cir. 2013); *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 216 (5th Cir. 2011). Governmental entities such as school districts are not vicariously liable under § 1983 for their employees' misconduct that results in a constitutional violation. *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942

23

F.3d 258, 271 (5th Cir. 2019); *Littell*, 894 F.3d at 622-23.   Thus, proof of a responsible policymaker is a necessary element for the imposition of governmental liability under § 1983. *Connick*, 563 U.S. at 60-61; *Piotrowski*, 237 F.3d at 579 (citing *Jett*, 491 U.S. at 737); *see Johnson*, 379 F.3d at 309.   State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity.   *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Culbertson*, 790 F.3d at 624.

Under Texas law, final policymaking authority for an independent school district is in its board of trustees.   *See Longoria ex rel. M.L.*, 942 F.3d at 271 (citing TEX. EDUC. CODE § 11.151(b)); *Rivera*, 349 F.3d at 247.   Thus, BISD cannot be found liable for an action of a nonpolicymaking employee, such as Officer LaRive or BISD Human Resources Director Lillie Babino ("Babino").[7]   *See Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998); *Meadowbriar Home for Child., Inc.*, 81 F.3d at 532-33; *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Foster v. McLeod Indep. Sch. Dist.*, No. 5:08-CV-71, 2009 WL 175154, at *2 (E.D. Tex. Jan. 23, 2009) ("Although principals and superintendents might have 'decision-making authority' under the Texas Education Code, they do not have 'the policymaking

---

[7] In her verified statement, Boutte appears to place some blame for her indictment upon Babino, averring that "Principal Jackson told [Boutte] as [her] supervisor that he was told by Babino on March 20, 2017[,] that the BISD PD had filed the charges with the District Attorney because she, Babino[,] had forgotten to tell BISD PD Chief Florez not to file a Probable cause affidavit against [Boutte]."   The court notes that Boutte fails to identify any portion of Principal Jackson's deposition testimony where he references or substantiates these assertions regarding Babino's failure to communicate with Chief Florez. Thus, this paragraph in Boutte's Verified Statement appears to be merely Boutte's retelling of a statement that Principal Jackson made to her.   Setting aside any hearsay implications that would render such a statement inadmissible for the purposes of proving the truth of the matter asserted, *see* FED. R. EVID. 801(c); FED. R. CIV. P. 56(c)(4) (requiring affidavits used to support or oppose a summary judgment motion to "set out facts that would be admissible in evidence"), the court observes that Boutte's assertions regarding Babino's alleged role in her indictment do not attribute any actions, much less knowledge of Boutte's eventual criminal charges, to BISD's Board.

24

authority required to sustain liability under § 1983.'"} (citing *Rivera*, 349 F.3d at 247-48)); *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (school district not liable when school board, without knowledge of alleged retaliatory motive, acted on recommendation of superintendent and principal to terminate employee).  "Texas law is clear that final policymaking authority in an independent school district, such as [BISD], rests with the district's board of trustees." *Jett*, 7 F.3d at 1245; *see Rivera*, 349 F.3d at 247; *Doe v. Northside Indep. Sch. Dist.*, 84 F. Supp. 2d 485, 491 (W.D. Tex. 2012); *see also* TEX. EDUC. CODE ANN. §§ 11.051(a), 11.151(b).

In the present motion, BISD contends that it is entitled to summary judgment on Boutte's Section 1983 claims because Boutte fails to produce any evidence that BISD's Board "promulgated an unconstitutional policy or condoned a widespread custom that caused the Superintendent to recommend Boutte for termination, much less caused Boutte to be indicted for theft charges," and thus, she cannot establish an essential element of *Monell* liability against BISD.  As an initial matter, the court observes that Boutte's operative complaint and response to the current motion both set out a variety of iterations of the Board's allegedly unlawful policy, rendering it difficult to discern the precise nature of the purported policy or practice that she alleges underlies her Section 1983 claims.  For example, Boutte devotes several paragraphs of her response to discussing the influence of the Texas Association of School Boards ("TASB") and the Texas Council of School Attorneys ("CSA") on various school districts, including BISD.[8]  Specifically, she asserts that these school districts have "accused employees of criminal activity in order to

---

[8] Specifically, Boutte also discusses Houston Independent School District ("HISD"), Jasper Independent School District ("JISD"), and Port Arthur Independent School District ("PAISD").

silence other employees and/or retaliate against the target employee." Boutte goes on to claim that
BISD has adopted "a version of TASB's policy in its practice of ruthless competitiveness with the
public-school labor force, doing whatever it takes to scare, punish, and retaliate against
non-disruptive contrarians and boat rockers, without probable cause; Plaintiff was indicted,
arrested and released on bail without probable cause." Elsewhere in her response, Boutte
maintains that "BISD has a widespread practice of falsely prompting the filing of criminal charges
without probable cause against persons to whom it is corporately opposed." Boutte does not argue
that any of her articulations refer to policies that BISD's Board has formally adopted or
promulgated, and she provides no evidence of such official policies. Boutte appears, therefore,
to attempt to base her Section 1983 claims upon establishing that the Board implemented or
condoned such "customs" or "conduct that has become a traditional way of carrying out policy
and has acquired the force of law." *Bennett*, 728 F.2d at 768.

Beyond her own experience, Boutte's response brief recounts two other incidents that she
claims demonstrate that BISD has adopted what she describes as TASB's policy of "accus[ing]
employees of criminal activity in order to silence other employees and/or retaliate against the
target employee."[9] In particular, Boutte's response describes criminal charges that had been levied

---

[9] Boutte also references incidents that occurred at HISD, JISD, and PAISD, but her inclusion of
these incidents is extraneous. Boutte appears to discuss these incidents in an effort to demonstrate that
TASB, along with CSA, has encouraged a policy or custom of "accus[ing] employees of criminal activity
in order to silence other employees and/or retaliate against the target employee" that multiple school
districts, including BISD, have adopted. Boutte, however, has not provided competent summary judgment
evidence demonstrating that TASB or CSA has endorsed such a policy or custom. Even if the court were
to entertain Boutte's request that it take judicial notice of CSA's Bylaws (#34-1) and its 2024-25
Application for Membership (#34-2), the most that the court could glean from these documents is that they
require members to "[p]ledge to conduct [themselves] in a manner that manifests a genuine interest and
sympathy with the purpose and objectives of [CSA]" which are, *inter alia*, "[i]dentifying current legal
issues for those who advise School Districts." Such objectives in no way indicate that TASB or CSA
espouses or encourages school districts to implement a policy or custom of making false accusations of

against BISD's former Purchasing Director, Naomi Lee ("Lee"), and a former BISD maintenance

employee, Greg Murphy ("Murphy").  With regard to Lee, Boutte explains that she

> was falsely accused by BISD of theft in overcharging for overtime, refused to
> resign, was terminated and then indicted by Jefferson County Grand Jury, forced
> to borrow substantial funds to retain a Houston lawyer ([DeGuerin]), found not
> guilty by Jefferson County District Court jury after her BISD supervisor (Saveatt)
> testified on cross examination that he knew of and approved her compensation.

As for Murphy, Boutte's response states that Murphy "was falsely charged with a felony criminal

act by the BISD Police on or about February 9, 2022, and the court dismissed those charges on

October 17, 2023."

As an initial matter, Boutte presents no competent summary judgment evidence of Lee or

Murphy's experiences, relying instead on the statements in her response, which are devoid of

citations to supporting evidence.  Although some of Boutte's exhibits attached to her response

purport to support these statements, the exhibits in question are either insufficiently detailed or

conclusory.  For example, Boutte relies on her own counsel's verified statement (#34-29), which,

in relation to Lee and Murphy, merely states that Boutte's counsel "[has] represented Hector

Mireles, Naomi Lee, Mamie Aplon, Greg Murphy, Dr. Jonathan Castile, and Dr. Sharon Boutte

in each of the cases referenced" and does not elaborate further.[10]

Additionally, Boutte's own Verified Statement (#34-28) attributes knowledge about

Murphy's incident to herself, stating that she "learn[ed] from reading a case in federal

court . . . that BISD PD Officer Shanter Norman was told to file criminal charges on BISD

criminal activity or pursuing fabricated criminal charges against school district employees.  Most
importantly, however, Boutte has failed to adduce competent summary judgment evidence showing that
BISD has implemented or condoned such a policy or custom.

[10] The other individuals mentioned in this sentence—Mireles, Aplon, Castile, and Sharon
Boutte—were not, according to the descriptions in Boutte's response, employed by BISD.

employee Greg Murphy even though Officer Norman found no reason to do so, being told to file

anyway." Boutte appears to be relying upon the Declaration of Shanter Norman ("Norman")

(#34-22), which she also attached as an exhibit to her response.[11] Norman's declaration, however,

likewise fails to provide competent evidence sufficient to support a "custom" for *Monell* liability

purposes. In his declaration, Norman recounts that, before the BISD Police Department arrested

Murphy, Murphy stated that he had merely been speaking about "his history in Birmingham,

Alabama" and "experiences he had during the Civil Rights Movement." Norman goes on to aver

that despite Murphy's being "calm and non-threatening," Norman's supervisor "insisted that

[Norman] arrest Mr. Murphy anyway." Norman's declaration then conclusorily states that "it is

clear to [him] the district retaliated against Mr. Murphy in violation of his First Amendment

Rights" and that "[t]his conduct by the District, based on my years of experience with BISD, is

a pattern and practice of retaliatory treatment of employees by the District that speak on matters

of public concern."[12] These particular statements amount to little more than a conclusory

allegation of the ultimate conclusion and a formulaic recitation of the "policy or practice" prong

of a *Monell* claim, and the court accordingly disregards them as incompetent summary judgment

evidence. Importantly, the court may not consider bare conclusions of law when deciding

summary judgment motions. *See La. State ex rel. La. Dep't of Wildlife & Fisheries v. Nat'l*

*Oceanic & Atmospheric Admin.*, 70 F.4th 872, 883 (5th Cir. 2023) (quoting *Clark v. America's*

---

[11] Notably, Norman's declaration was also submitted as part of Murphy's evidence in his own lawsuit against BISD, which remains pending before this court. *See Murphy v. Beaumont Indep. Sch. Dist.*, No. 1:22-CV-135 (E.D. Tex.).

[12] Norman's declaration also vaguely states that Norman "[has] also been the victim of 1st Amendment Retaliation by the District" but fails to elaborate on this broad statement or explain in what type of protected speech Norman engaged or how BISD purportedly retaliated against him.

*Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) ("The objected-to statements [in affidavits] are legal conclusions and thus are not competent summary judgment evidence." (citing *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012))); *Shultz v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 701 F. Supp. 3d 457, 461 (E.D. La. 2023) ("[A]ffidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985))).  Furthermore, even assuming that Norman's conclusory statements were sufficient to demonstrate that BISD had implemented such a policy or practice of retaliating against employees who speak on matters of public concern, the scant details in Norman's declaration provide the court with no insight as to what matters of "public concern" Murphy was purportedly speaking about or why BISD would be inclined to "retaliate" against him.  As such, Boutte falls markedly short of mustering competent summary judgment evidence to demonstrate that BISD has a "custom" of pursuing unfounded criminal charges against BISD employees.

Moreover, even if Boutte could produce competent evidence of these incidents, based upon her descriptions in her response, Lee's and Murphy's experiences are not sufficiently similar to the issues in her case.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (stating that "a pattern requires similarity and specificity"); *Golden v. Austin Cnty. Sheriff's Dep't*, No. H-09-817, 2010 WL 3909476, at *9 (S.D. Tex. Sept. 30, 2010) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.  That is, notice of a pattern of *similar* violations is required." (emphasis added) (quoting *Est. of Davis*, 406 F.3d at 383)).  Indeed, besides both being former BISD employees who were

29

criminally charged, it is unclear that Lee's and Murphy's experiences are similar to each other. Critically, the lack of details in Boutte's response, not to mention the paucity of supporting evidence, leaves the court unsure as to what activities or protected speech either Lee or Murphy engaged in that would lead BISD to "retaliate" against them, rendering it impossible to determine if the incidents were, in fact, similar to each other.

Considering Boutte's alleged constitutional deprivations in turn, it is clear that Lee's and Murphy's situations were not, based on the sparse details provided to the court, similar to Boutte's in any regard.  Beginning with Boutte's assertions that BISD violated her rights under the Thirteenth Amendment, while Boutte claims that BISD "enslaved" her by limiting her ability to work as a teacher elsewhere, she discusses no similar constraints that BISD visited upon either Lee or Murphy.  Indeed, it seems that, unlike Boutte, neither Lee nor Murphy continued to work for BISD following their criminal charges, resulting in situations that are completely inapposite from Boutte's for Thirteenth Amendment purposes.   As for her Fourteenth Amendment Equal Protection claim, Boutte provides no evidence of male BISD employees who were treated differently than she.  Indeed, because Murphy is a male, Boutte's contention that his circumstances were similar to hers—presumably in hope of demonstrating a pattern of other types of constitutional deprivations—undermines her ability to establish her Equal Protection claim on the basis of sex.  Turning next to Boutte's substantive and procedural due process claims, the lack of clarity and detail in Boutte's complaint renders it impossible for the court to discern how the

similarities of her own alleged due process deprivations compare to any similar deprivations that Lee and Murphy purportedly suffered.[13]

As best the court can decipher, Boutte's First Amendment retaliation claim and Fourth Amendment malicious prosecution claim appear to present the strongest potential for parallels among Boutte's, Lee's, and Murphy's respective circumstances.  Nonetheless, Boutte fails to demonstrate that Murphy's and Lee's circumstances were sufficiently similar on these grounds.  For example, while Boutte explains that the BISD Police Department pursued criminal charges against Murphy, she does not assert that the BISD Police Department—much less any other BISD entity or the BISD Board—played any role in Lee's indictment.  It is also unclear how soon Lee was indicted after her termination, much less the specific crime for which Lee was indicted, and how her indictment purportedly related to her employment with BISD.  While the court could speculate that Boutte attempts to compare her circumstances to Lee's because they both were indicted after opposing their termination or proposed termination from BISD, there are nevertheless unavoidable dissimilarities even in this regard.  Most notably, Lee was indicted after she refused to resign and was terminated by BISD, whereas Boutte was indicted after reaching a settlement with BISD and avoiding termination.  As for similarities between Lee and Murphy, although Boutte insists that BISD retaliated against both employees for speaking on "matters of

_____

[13] Indeed, the conclusory fashion of Boutte's substantive and procedural due process claims provide the court with sufficient reason to grant BISD summary judgment on these claims.  *See Patel v. Tex. Tech Univ.*, 941 F.3d 743, 748 (5th Cir. 2019) (affirming the district court's dismissal of the plaintiff's substantive due process claim because "conclusory allegations cannot create a genuine fact issue sufficient to defeat summary judgment" and the record was devoid of evidence to support the plaintiff's conclusory allegations (citing *Little*, 37 F.3d at 1075)); *Charlie Brown Heritage Found. v. Columbia Brazoria Indep. Sch. Dist.*, No. 3:15-CV-346, 2018 WL 2059203, at *4 n.17 (S.D. Tex. May 3, 2018) (explaining that where the plaintiff "mentioned a substantive due process claim only once in its [operative] complaint" and "failed to address this claim any further," its "[c]onclusory pleading [was] insufficient and [could not] defeat" the defendants' motions for summary judgment), *aff'd*, 771 F. App'x 536 (5th Cir. 2019).

public concern," it is unclear about what matter of public concern Murphy allegedly spoke. Accordingly, there is insufficient evidence of similarities between Boutte's, Lee's, and Murphy's respective situations to raise a genuine issue of material fact as to whether Boutte can establish a pattern of similar deprivations of any of the constitutional rights she alleges BISD violated.

Additionally, even if Boutte could successfully demonstrate that her situation was similar to Lee's and Murphy's, she nevertheless has failed to show that such incidents "are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school district] employees.'" *Robinson v. Midland County*, 80 F.4th 704, 710 (5th Cir. 2023) (quoting *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023)), *cert. denied*, 144 S. Ct. 1010 (2024). Indeed, because Boutte's response does not mention any BISD employee's involvement in Lee's indictment, Boutte's argument is essentially that BISD sought unfounded indictments against only two former employees—herself and Murphy—over a five-year time period, which is simply inadequate evidence of "the persistent, often repeated, constant violations that constitute custom and policy." *Jackson*, 852 F. App'x at 135-36 (concluding that six total incidents over a period of five years were "isolated violations" insufficient to support a *Monell* claim (quoting *Bennett*, 782 F.2d at 768 n.3)); *Henderson v. Killeen Indep. Sch. Dist.*, No. A-13-ca-471-LY, 2013 WL 6628630, at *3 (W.D. Tex. Dec. 16, 2013) ("Two isolated incidents clearly do not constitute a pattern of unconstitutional conduct sufficient to hold [the school district] liable under § 1983.").

Boutte likewise cannot withstand summary judgment on her Section 1983 claims because she provides no evidence that, even if she could demonstrate that BISD has a custom of violating

its employees' various constitutional rights by pursuing baseless criminal charges against them, actual or constructive knowledge of such a custom is attributable to BISD's Board.  Importantly, where a custom is shown, the plaintiff must demonstrate that "[a]ctual or constructive knowledge of [a] custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)); *see Cox*, 430 F.3d at 749 n.53; *Rivera*, 349 F.3d at 249.  Indeed, "[p]roof of a custom and knowledge of that custom are separate elements." *Garcia v. Contreras*, No. C-07-359, 2008 WL 4646897, at *9 n.8 (S.D. Tex. Oct. 20, 2008) (citing *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002)); *accord Cox*, 430 F.3d at 749; *Rivera*, 349 F.3d at 249; *Garcia v. County of El Paso*, 79 F. App'x 667, 669-70 (5th Cir. 2003).  "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842; *accord Bennett*, 728 F.2d at 768.  "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Bennett*, 728 F.2d at 768.  "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Webster*, 735 F.2d at 842 (quoting *Bennett*, 728 F.2d at 768).

Here, Boutte makes no specific allegations that BISD's Board played a role in or was aware of Officer LaRive's submission of the probable cause affidavit or his request that the District

Attorney's Office pursue criminal charges against Boutte.   Further, Boutte references no "discussions at [Board] meetings," "receipt of written information," or any other evidence that the Board had "actual knowledge" of the prompting of Boutte's (or any other BISD employee's) indictment.   *Bennett*, 728 F.2d at 768.   Boutte similarly fails to adduce evidence attributing constructive knowledge of such an alleged custom to the Board.   As noted above, she identifies only one other example where BISD sought purportedly unwarranted criminal charges against an employee, which falls short of establishing that the alleged "violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity."   *Webster*, 735 F.2d at 842 (quoting *Bennett*, 728 F.2d at 768).   Thus, Boutte cannot establish a pattern of similar incidents sufficient to demonstrate that BISD had a custom of "accus[ing] employees of criminal activity in order to silence other employees and/or retaliate against the target employee," much less that BISD's Board had any knowledge of such a custom.

As a result, Boutte has failed to create a genuine dispute of material fact as to whether the Board promulgated a policy or implemented or condoned a practice of violating BISD employees' constitutional rights with regard to any of her Section 1983 claims.   Boutte's *Monell* claims accordingly fail.   *See Barnett v. City of Laurel*, No. 2:18-CV-92-KS-MTP, 2019 WL 5865774, at *3 (S.D. Miss. Nov. 8, 2019) (granting the municipal defendant's motion for summary judgment "as to all Section 1983 claims asserted against it" where the plaintiff "[could not] prove that a municipal policy or custom was the moving force behind the alleged constitutional deprivations in [that] case"); *Choate v. City of Abbeville*, No. 6:16-CV-01370, 2018 WL 3848660, at *5-6 (W.D. La. Aug. 10, 2018) (granting summary judgment to the municipal defendant on the plaintiff's § 1983 claims because, even "assuming *arguendo* that the plaintiff could establish [a

constitutional deprivation]," it was "clear that the plaintiff's *Monell* claim fail[ed] at the first prong" where the plaintiff failed to establish the existence of an official policy or custom); *Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 3198159, at *10 (S.D. Tex. June 9, 2016) (concluding that, without a showing that the school district's board of trustees "had the requisite knowledge of the policies or customs complained of and the pervasive failures alleged, Plaintiff fails to satisfy a vital prong in the municipal liability analysis," and the court accordingly "need not reach the issue of whether the practices identified actually resulted in a constitutional deprivation or served as a moving force behind a constitutional violation"). Therefore, BISD is entitled to summary judgment on Boutte's claims that BISD violated her First, Fourth, Thirteenth, and Fourteenth Amendment rights under Section 1983.

III.   Conclusion

Accordingly, BISD's Motion for Summary Judgment (#25) is GRANTED. There remain no material facts in dispute, and BISD is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 19th day of August, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE